DENVER-LARAMIE REALTY CO. v. WYOMING TROUT & PRODUCE CO.†

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

No. 4055.

1. VENDOR AND PURCHASER ⬅➞322—BREACH OF CONTRACT—RIGHT OF ACTION.
    D., the president of a trout company, conducting a fish hatchery on a site owned by a ranch company under a grant from the ranch company of the right to use and possess such site, procured an option to purchase the ranch company's property and contracted to sell it to defendant. Subsequently a contract, reciting that D. was acting for the sole use and benefit of defendant, was made between him and the ranch company for the purchase of the property, in which the ranch company agreed to keep and maintain certain state leases, paying all charges thereon, and to assign them to D. on a certain date, except that certain leases for the land on which the hatchery was situated were to be assigned at any time to D. The ranch company refused to assign the leases because defendant failed

to pay the purchase price as agreed, and, because of defendant's failure to carry out the contract, the trout company was compelled to abandon the hatchery. *Held*, that whether D., in making the last-mentioned contract, acted for himself or for defendant, the failure of the ranch company to assign the leases gave rise to no cause of action by D. or his successors in interest against defendant for the value of the unexpired term of the leases.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 944–947; Dec. Dig. ☜322.]

2. TRIAL ☜91—RECEPTION OF EVIDENCE—MOTIONS TO STRIKE OUT—NECESSITY OF OBJECTIONS.

As a general rule, where a question propounded to a witness clearly discloses whether the testimony to be elicited is admissible or not, if a party neglects to object to the question, the denial of a subsequent motion to strike out the evidence is not error, unless such party for some good reason has been prevented from objecting.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 242–244, 252; Dec. Dig. ☜91.]

In Error to the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by the Wyoming Trout & Produce Company against the Denver-Laramie Realty Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

N. E. Corthell, of Laramie, Wyo., for plaintiff in error.

C. P. Arnold, of Laramie, Wyo., and Sheridan Downey, of Sacramento, Cal., for defendant in error.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

CARLAND, Circuit Judge. This is an action by the Wyoming Trout & Produce Company, hereinafter called the produce company, to recover damages for breach of contract from the Denver-Laramie Realty Company, hereinafter called the realty company. A judgment for $17,000 was recovered in the court below. The realty company complains of certain rulings of the trial court. In order to more clearly understand the position of the parties at the trial, a brief statement of some of the surrounding circumstances as they appear in the record is necessary.

[1] In November, 1909, the Wyoming Trout Company, hereinafter called the trout company, was organized as a corporation under the laws of Wyoming, for the purpose of spawning, hatching, and maturing trout in the county of Albany, Wyo., and selling the said trout and the eggs and fry thereof. For the purpose of commencing and carrying on its business, it made a contract with the Willow Creek Ranch Company, whereby the ranch company granted to the trout company the right to use and possess for 99 years a certain site owned by the ranch company for the culture of trout in return for a certain amount of the net profits of the business. The trout company, relying on the contract, erected a fish hatchery with troughs and a syphon, for the purpose of conducting water through said building. It also erected an icehouse and other buildings on the land and site mentioned, and

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

constructed thereupon ditches, ponds, dams, and reservoirs such as were necessary and convenient for the culture of trout and the marketing thereof.

One Sheridan Downey was the president of the trout company. On June 4, 1910, Downey, having an option to purchase the Willow Creek ranch, entered into a contract in writing with the realty company for the sale thereof. The ranch consisted of 14,150 acres, for which the realty company agreed to pay $5.15 per acre. The fish hatchery, hereinbefore mentioned, was located upon a portion of the ranch. On June 30, 1910, Downey, for the sole use and benefit of the realty company, entered into a supplemental contract with the ranch company for the purchase of the Willow Creek ranch. In said contract it was provided, among other things, as follows:

"And it is further agreed by the said ranch company that it will keep and maintain all of its present state leases on the lands hereinbefore set out until November 1, 1911, paying all charges on same until said date, when it shall assign, without further charge, each and all of same, together with all improvements thereon, to said Downey, with this exception: That the state leases on the northeast quarter of the northwest quarter, northwest quarter of northeast quarter, and southwest quarter of northeast quarter of section four (4), township thirteen (13) north, of range 73 W., shall be assigned at any time after date hereof to said Downey in his personal capacity."

July 1, 1910, Downey, in consideration of the sum of $1 and other lawful considerations, sold, assigned, and transferred to the trout company all his right, title, and interest in and to the contracts of June 4, and 30, 1910, including the right to the assignment of 120 acres of land in section 4, township 13, range 73, mentioned in the contract of June 30, 1910. January 24, 1911, the produce company was organized, with Downey as president and general manager. February, 1911, the trout company, in consideration of the sum of $17,700, sold, assigned, and transferred to the produce company all its real and personal property, accounts, rights, and contracts of whatsoever kind and nature. The present action was commenced by the produce company as the successor in interest of Downey and the trout company, to recover damages from the realty company for the alleged breach of the contracts of June 4 and June 30, 1910. At the trial of the action in the court below, the produce company claimed the right to recover damages from the realty company as the successor of Downey and the trout company for the failure of the ranch company to assign to Downey personally the state leases covering the land described in the excerpt, above quoted, from the contract of June 30, 1910. It appeared that the leases referred to were executed by the state of Wyoming in 1908, and that the produce company abandoned the fish hatchery October 10, 1911, claiming it was compelled to do so by reason of the failure of the realty company to carry out its contract to purchase the ranch property. The leases ran for five years, and therefore there was an unexpired term of about two years. The ranch company refused to assign these leases to Downey, because the realty company had failed to make payment of the purchase price for the ranch as agreed.

Testimony was admitted over objection for the purpose of showing

the value of the unexpired term of the leases, and the failure of the ranch company to assign the leases to Downey in his personal capacity, as mentioned in the contract of June 30, 1910, was submitted to the jury by the trial court as an item of damage for which the realty company was liable. Downey testified as a witness that the value of the unexpired term of the leases was $3,000. Other testimony was given upon the same subject. At the close of the testimony for the plaintiff, counsel for the realty company made the following motion:

"The defendant moves the court, at the conclusion of the evidence for the plaintiff in this case, as follows: (1) To strike out all of the evidence offered and introduced tending to show the value of the unexpired term of the state land lease on the 120 acres in section 4, lying below the Willow creek reservoir, and containing the buildings and improvements of the plaintiff company, upon the ground that the defendant never became obligated, by contract or otherwise, to do anything with reference to the assignment or transfer or a conveyance for that property to the plaintiff in this case, or its assignors."

This motion was overruled and exception taken.

At the close of all the testimony counsel for the realty company requested the court to charge the jury as follows:

"It appears from the evidence that the defendant had nothing to do with the lease of the 120 acres of state land, lying below the Willow creek reservoir, and on which the fish hatchery improvements of the plaintiff were located, and did not at any time assume any obligation to assign or convey the lease of such lands. The jury, therefore, will not allow any damages for failure to assign or convey such lease."

The request was denied and exception allowed.

The contract of June 30, 1910, contained the following recital:

"Whereas the realty company is desirous of having said Downey act for and in its behalf and for its sole use and benefit in that certain contract of even date herewith between the Willow Creek•Ranch Company and James McGibbon, Sr., James McGibbon, Jr., Ralph McGibbon, and George McGibbon, and Sheridan Downey, which contract is hereto attached and made a part hereof; and whereas said Downey is desirous of acting in such capacity for the sole use and benefit of the realty company."

The paragraph quoted herein from the same contract, and which it is claimed was broken in the failure of the ranch company to assign to Downey the leases for the land described therein, contains an expression that the leases should be assigned to Downey in his personal capacity. We do not see how the failure of the ranch company to assign the leases in question to Downey can give rise to any cause of action by Downey or his successors in interest against the realty company. Downey either acted for the realty company in making the contract or he acted for himself. If he acted for the realty company, as the express language of the contract said he did, then he has no cause of action against it, and if he acted for himself he certainly has no cause of action against it. Therefore it was clearly error to submit this item of damage to the jury as a basis of recovery against the realty company.

[2] Numerous other errors are assigned as to the rulings of the trial court upon the admission and rejection of evidence, some of which cannot occur again by reason of the ruling now made. In

regard to the others, we deem it sufficient to say that counsel may not, as a general rule in the trial of a cause, when the question propounded to the witness discloses clearly whether the testimony to be elicited is admissible or not, neglect to object to the question and then at some further stage of the trial move to strike out the evidence of the witness and assign the ruling of the court thereon as error, unless for good reason he has been prevented from objecting to the question.

Judgment reversed, and a new trial ordered.